UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANT DIAZ, on behalf of himself and all others similarly situated, | No. 2:22-cv-00100-TLN-KJN |
| Plaintiff, | **ORDER** |
| v. | |
| ARDAGH METAL BEVERAGE USA, INC., a Delaware corporation; and DOES 1–50, inclusive, | |
| Defendants. | |

This matter is before the Court on Plaintiff Grant Diaz's ("Plaintiff") Motion to Remand. (ECF No. 5.) Defendant Ardagh Metal Beverage USA, Inc. ("Defendant") filed an opposition. (ECF No. 6.) Plaintiff filed a reply. (ECF No. 8.) For the reasons set forth below, the Court DENIES Plaintiff's Motion to Remand.

///
///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant, a beverage can manufacturer, employed Plaintiff as a non-exempt employee from approximately June 2012 until his termination on November 24, 2021. (ECF No. 1 at 19.) On December 6, 2021, Plaintiff filed the instant class action against Defendant alleging violations of the California Labor Code and California Business and Professions Code in the Solano County Superior Court. (*Id.* at 16–17.) Plaintiff alleges Defendant: (1) failed to pay all minimum wages; (2) failed to pay all overtime wages; (3) did not provide the requisite meal periods; (4) did not provide the requisite rest periods; (5) provided inaccurate wage statements; (6) failed to timely pay all compensation due and owing upon discharge; and (7) engaged in unfair competition. (*Id.*)

On January 18, 2022, Defendant removed the action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (*Id.* at 1.) Defendant claims this action meets the CAFA requirements of class size, minimal diversity, and the amount in controversy. (*Id.* at 3.) On February 16, 2022, Plaintiff filed the instant motion to remand in which he only contests Defendant's asserted amount in controversy. (ECF No. 5 at 8.) On March 10, 2022, Defendant filed an opposition. (ECF No. 6.) Plaintiff replied on March 15, 2022. (ECF No. 8.)

## II. STANDARD OF LAW

### A. Amount in Controversy

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if: (1) the class has more than 100 members; (2) any member of the class is diverse from the defendant; and (3) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5)(B).

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As a general rule, removal statutes are to be strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin*

*Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Nonetheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

A defendant seeking removal under CAFA must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). The notice of removal "need not contain evidentiary submissions," but rather a defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" suffices. *Id.* at 84, 89. When "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

"[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. Then "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 574 U.S. at 89 (internal citation omitted).

**III.    ANALYSIS**

Plaintiff argues Defendant has not proven the amount in controversy exceeds $5,000,000 by a preponderance of the evidence. (ECF No. 5 at 8.) Specifically, Plaintiff contends Defendant's removal notice did not contain any evidence, and Plaintiff also challenges the assumptions underlying Defendant's amount in controversy calculations. (*Id.* at 8–18.) In the opposition, Defendant asserts it was not required to submit evidence with its removal notice,

1   Plaintiff failed to produce any evidence to contest Defendant's calculations, and Defendant's
2   evidence and reasonable assumptions show the amount in controversy requirement is met. (ECF
3   No. 6 at 9–12.) With the opposition, Defendant also submits the declarations of Amy Haney
4   ("Haney Declaration"), Payroll Analyst for Defendant's parent company, and Jennifer Kyle
5   ("Kyle Declaration"), Kronos Analyst for Defendant's parent company. (ECF Nos. 6-1, 6-2.) In
6   the reply, Plaintiff contests the declarations and argues he was not required to submit evidence
7   with his motion and the assumptions Defendant uses are speculative. (ECF No. 8 at 4–8.)

8        As a preliminary matter, Defendant was not required to submit evidence with its notice of
9   removal. *See Dart Cherokee*, 574 U.S. at 84, 89 (holding the notice of removal "need not contain
10  evidentiary submissions" and defendant's "plausible allegation that the amount in controversy
11  exceeds the jurisdictional threshold" is sufficient at that stage). Thus, to the extent Plaintiff
12  argues Defendant's notice of removal is deficient because it did not contain any evidence, the
13  Court disagrees.

14       The Court will first address whether Plaintiff needed to submit evidence with his motion
15  and the sufficiency of the Haney Declaration and the Kyle Declaration before addressing whether
16  the amount in controversy requirement is satisfied.

17             A.     <u>Evidence in a Motion to Remand</u>

18       Defendant argues CAFA requires both sides to submit proof. (ECF No. 6 at 10 (citing
19  *Dart Cherokee*, 574 U.S. at 88).) Defendant asserts that because Plaintiff failed to provide any
20  evidence with his motion to remand, the motion should be denied. (*Id.* at 11.) In the reply,
21  Plaintiff asserts Defendant misinterprets *Dart Cherokee* and that Plaintiff was not required to
22  submit evidence with his motion. (ECF No. 8 at 5–6.) The Court agrees with Plaintiff.

23       Defendant points to language in *Dart Cherokee* stating "both sides submit proof" and a
24  court decides "by a preponderance of the evidence, whether the amount-in-controversy
25  requirement has been satisfied." (ECF No. 6 at 10 (citing *Dart Cherokee*, 574 U.S. at 88).)
26  However, a plaintiff may factually attack a defendant's amount in controversy allegations by
27  challenging the underlying assumptions and without submitting evidence. *Harris v. KM Indus.,*
28  *Inc.*, 980 F.3d 694, 700 (9th Cir. 2020) (a factual attack on jurisdictional allegations "need

4

1  only . . . mak[e] a reasoned argument as to why any assumptions on which they are based are not
2  supported by evidence"); *Lacasse v. USANA Health Scis., Inc.*, No. 2:20-cv-01186-KJM-AC,
3  2021 WL 107143, at *2 (E.D. Cal. Jan. 12, 2021) (outside evidence is not necessary in a factual
4  attack on a defendant's jurisdictional allegations).
5        Accordingly, Plaintiff may factually attack Defendant's amount in controversy allegations
6  without submitting evidence and Plaintiff's motion to remand is not defeated solely because it
7  lacks evidentiary support.
8        B.      <u>The Haney Declaration and the Kyle Declaration</u>
9        In the reply, Plaintiff challenges the Haney Declaration and the Kyle Declaration and
10  asserts they contain generalities and unfounded approximations.  (ECF No. 8 at 4, 8.)  The Court
11  disagrees.
12        Courts have found declarations from knowledgeable personnel to be sufficient for
13  establishing the amount in controversy in similar cases.  *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d
14  1175, 1186–87 (E.D. Cal. 2020) (finding a declaration from defendant's "Associate Director of
15  the Operational Finance Department" based on "his personal knowledge of [d]efendant's business
16  records" to be sufficient); *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV 19-06963-
17  CJC(RAOx), 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (finding "a declaration from a
18  knowledgeable employee based on her analysis of regularly kept and created business records" to
19  be sufficient).
20        In the instant case, the Haney Declaration and the Kyle Declaration establish the
21  following for the putative class: (1) the average hourly pay rate; (2) the number of employees; (3)
22  the pay period frequency; (4) the total pay periods worked; (5) the total shifts worked; and (6) the
23  total numbers of shifts worked at different shift lengths.  (ECF No. 6-1 at 3; ECF No. 6-2 at 3.)
24  Haney and Kyle each declare that their respective declarations are based upon their personal
25  knowledge and/or review of records prepared and maintained in the ordinary course of business.
26  (ECF No. 6-1 at 2; ECF No. 6-2 at 2.)  Based on the information in the Haney Declaration and the
27  Kyle Declaration — and in the absence of any evidence from Plaintiff to the contrary — the
28  Court concludes that the two declarations lay a sufficient evidentiary foundation to determine the

5

amount in controversy.

C. <u>Unpaid Minimum Wages Claim</u>

Plaintiff argues the assumption underlying Defendant's amount in controversy estimate of $1,548,050 for this claim lack an evidentiary basis.  (ECF No. 5 at 10.)  In its opposition, Defendant revises its estimate to $1,587,550 based on the following calculation: ($100 initial penalty × 128 pay periods) + ($250 subsequent penalty × 6,299 pay periods).  (ECF No. 6 at 12.)  Defendant argues Plaintiff's broad allegations and the nature of civil penalties under California Labor Code § 1197.1 make its estimate reasonable.  (*Id.* at 13.)

Courts have found it is reasonable to assume a minimum wage violation rate of at least one violation per employee per pay period where the plaintiff alleges an unlawful time rounding policy.  *Altamirano v. Shaw Indus.*, Inc., No. C-13-0939 EMC, 2013 WL 2950600, at *10 (N.D. Cal. June 14, 2013) ("Given [p]laintiff's allegations that the rounding policy applied to all non-exempt employees, the assumption that there was at least one violation per employee per pay period is a reasonable one."); *see also Archuleta v. Avcorp Composite Fabrication, Inc.*, No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *3–4 (C.D. Cal. Dec. 6, 2018) (finding an assumption of three minutes of unpaid time per day to be reasonable due to allegedly improper time rounding).

In his Complaint, Plaintiff alleges Defendant had a "uniform and unlawful practice of rounding to the nearest 15-minute interval" resulting in employees not being paid for all hours worked.  (ECF No. 1 at 28.)  As relevant here, a civil penalty exists for each employee paid less than the minimum wage for each pay period in which the employee was underpaid — $100 for an initial violation, and $250 each time thereafter.  Cal. Lab. Code § 1197.1.  Plaintiff seeks to recover these penalties.  (ECF No. 1 at 22, 34.)

Defendant claims an amount in controversy of $1,587,550 based entirely on civil penalties.  (ECF No. 6 at 12.)  In making its calculation, Defendant assumes every employee experienced at least one minimum wage violation every pay period.  (*Id.* at 12–13.)  Plaintiff challenges this assumption but does not produce any rebuttal evidence or identify an alternative assumption.  (*See* ECF No. 5 at 10–12.)  Because of Plaintiff's broad allegations of a uniform and

6

unlawful time rounding practice, it is reasonable to assume at least one violation occurred per employee per pay period. *See Altamirano*, 2013 WL 2950600, at *10. Accordingly, Defendant has satisfactorily shown the unpaid minimum wages claim establishes an amount of controversy of $1,587,550.

D. Unpaid Overtime Claim

Plaintiff challenges the assumption underlying Defendant's amount in controversy figure of $915,543 for this claim. (ECF No. 5 at 11.) Specifically, Plaintiff argues Defendant's assumption that every employee worked one unpaid hour of overtime every workweek is arbitrary and not grounded in real evidence. (*Id.*) In its opposition, Defendant revises its estimate to $901,073 based on the following calculation: $32.30 average hourly rate $\times$ 1.5 $\times$ 1 unpaid overtime hour per week $\times$ 18,598 workweeks. (ECF No. 6 at 12.) Defendant argues its assumption is justified based on Plaintiff's allegations of a "uniform and unlawful policy/practice" of rounding time. (*Id.* at 14.)

Defendant points to other cases where courts have found estimates of one to two hours of unpaid overtime per employee per week to be reasonable. (*Id.* (citing *Andrade*, 2019 WL 4855997; *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19cv1675-GPC(BLM), 2019 WL 5677846 (S.D. Cal. Nov. 1, 2019); *Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012).) However, the plaintiffs in the cited cases did not allege unpaid overtime due to time rounding. *See Andrade*, 2019 WL 4855997, at *3; *Cavada*, 2019 WL 5677846, at *4; *Jasso*, 2012 WL 699465, at *5. In contrast, Defendant's unpaid overtime assumption is premised on Plaintiff alleging unlawful time rounding. (ECF No. 6 at 14.) Therefore, Defendant's cited cases are of limited relevance to the instant motion.

Courts have diverged on the amount of unpaid time that can be reasonably assumed from a time rounding policy. *See Garza v. WinCo Holding, Inc.*, No. 1:20-cv-01354-JLT-HBK, 2022 WL 902782, at *5–6 (E.D. Cal. Mar. 28, 2022) (finding one hour of unpaid overtime per week a reasonable assumption based on an allegation of a "uniform and unlawful practice" of rounding); *Brumbach v. Hyatt Corp.*, No. 20-cv-2231-WQH-KSC, 2021 WL 926692, at *6 (S.D. Cal. Mar. 11, 2021) (finding ten minutes of unpaid time per week a reasonable assumption given allegations

7

1   that defendant "consistently" and "uniformly" failed to pay employees due to illegal rounding);
2   *Altamirano*, 2013 WL 2950600, at *10 (finding thirty minutes of unpaid time per week a
3   reasonable assumption due to the allegedly unlawful time rounding policy).

4       The factual allegations of this case suggest Defendant's assumption of one hour of unpaid
5   overtime per employee per week is excessive. Plaintiff's Complaint alleges Defendant's policy
6   rounded time to the nearest quarter hour. (ECF No. 1 at 20.) The longest amount of time that can
7   be lost from rounding a single time entry to the nearest quarter hour is seven minutes. Therefore,
8   although it is possible that Defendant's rounding policy could have resulted in the loss of one
9   overtime hour in a week, it is unlikely this would have been the case every week because
10  Defendant's policy also rounded time up. Thus, the Court finds Defendant's assumption in this
11  regard unreasonable. For the purposes of this claim, the Court finds a reasonable assumption is
12  that there were thirty minutes of unpaid overtime per employee per week. *See Altamirano*, 2013
13  WL 2950600, at *10. This reduces Defendant's amount in controversy figure by half, to
14  $450,537. Accordingly, Defendant has satisfactorily shown the unpaid overtime claim
15  establishes an adjusted amount in controversy of $450,537.

16          E.      <u>Meal Period Violations Claim</u>

17  Plaintiff contests Defendant's assumption that all putative class members missed 30% of
18  meal periods, a violation rate resulting in a $732,527 amount in controversy. (ECF No. 5 at 12–
19  14.) In its opposition, Defendant revises its figure to $657,350 based on the following
20  calculation: $32.30 average hourly rate × 30% meal period violation rate × 67,838 shifts
21  qualifying for at least one meal period. (ECF 6 at 12.) Defendant argues its 30% assumption is
22  reasonable due to Plaintiff's allegation that employees were denied meal periods because of
23  "Defendant's uniform meal period policies and/or practices." (*Id.* at 15.)

24      A defendant is not required to "review extensive employee records . . . to ascertain the
25  exact violation rate for the purposes of removal." *Heatley v. Lin Rogers Elec. Contractors, Inc.*,
26  No. SACV 22-000042-CJC(KESx), 2022 WL 715156, at *3 (C.D. Cal. Mar. 10, 2022) (citing
27  *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1031 (C.D. Cal. 2017)).
28  Whether the plaintiff's complaint places limits on the claims alleged is relevant to the

8

1    reasonableness of the defendant's assumed violation rate. *See Stanley v. Distrib. Alts., Inc.*, No.
2    EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding it
3    reasonable to assume "three missed meal breaks per week" where "the complaint offer[ed] no
4    guidance as to the frequency of these violations"); *Heatley*, 2022 WL 715156, at *3 ("District
5    courts have routinely found such [violation rate] calculations reasonable when a plaintiff has
6    placed no limits on such claims in their complaint . . . .").

7    Plaintiff's Complaint alleges employees were "often" denied meal periods due to
8    Defendant's uniform meal period policies and/or practices. (ECF No. 1 at 23.) The Court does
9    not find Plaintiff's description of the meal period violation rate as "often" to be a limit that makes
10   Defendant's 30% violation rate unreasonable. *See Heatley*, 2022 WL 715156, at *4 (finding the
11   complaint's description of the violation rates as "often" or "not provided with at all" was not a
12   limit on the scope of the allegations).

13   This Court has previously held a 20% to 60% violation rate for meal period violations to
14   be reasonable. *See Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-cv-00863-TLN-JDP, 2022
15   WL 597158, at *4 (E.D. Cal. Feb. 28, 2022); *Sanchez v. Abbott Labs.*, No. 2:20-cv-01436-TLN-
16   AC, 2021 WL 2679057, at *4–5 (E.D. Cal. June 30, 2021). Defendant's 30% violation rate fits
17   squarely within this range. Additionally, Plaintiff did not provide an alternative violation rate or
18   submit any rebuttal evidence. (*See* ECF No. 5 at 12–14.) "Plaintiff cannot simply sit silent and
19   take refuge in the fact that it is Defendant's burden to establish the grounds for federal
20   jurisdiction. This is especially the case since the knowledge in question — how often Plaintiff
21   claims [he] was [denied meal periods] — is uniquely within Plaintiff's possession." *Patel v. Nike
22   Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014). Thus, the 30% meal period
23   violation rate is reasonable and Defendant has satisfactorily shown the meal period violations
24   claim establishes an amount in controversy of $657,350.

25         F.    Rest Period Violations Claim

26   Plaintiff contests Defendant's assumption of a 60% rest period violation rate, which
27   results in a $1,465,053 amount in controversy. (ECF No. 5 at 12–14.) In its opposition,
28   Defendant revises its figure to $1,325,011 based on the following calculation: $32.30 average

9

hourly rate × 60% rest period violation rate × 68,370 shifts qualifying for at least one rest period. (ECF No. 6 at 12.)  Defendant argues its 60% assumption is reasonable because of Plaintiff's allegations that Defendant failed to provide any rest periods.  (*Id.* at 15–16.)

Plaintiff's Complaint alleges "Defendant failed to provide *any* 10-minute rest periods for every 4 hours or major fraction thereof."  (ECF No. 1 at 23 (emphasis added).)  Where a plaintiff alleges uniform rest period violations, courts have found a 60% violation rate to be reasonable. *Alvarez v. Off. Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017); *see also Kincaid*, 2022 WL 597158, at *4 (E.D. Cal. Feb. 28, 2022) ("This Court has held previously that a 20% to 60% violation rate for . . . rest period violations to be reasonable.").  Moreover, Defendant's calculations only take one rest period per shift into account when most shifts were eligible for three.  (ECF No. 6 at 16; ECF No. 6-2 at 3.)  Thus, the Court finds Defendant's 60% rest period violation rate to be reasonable.  Accordingly, Defendant has satisfactorily shown the rest period violations claim establishes an amount of controversy of $1,325,011.

### G.     Wage Statement Violations Claim

Plaintiff alleges Defendant violated California Labor Code § 226(a) with its wage statements, such as by failing to correctly state the name and address of the employer.  (ECF No. 1 at 24.)  In the notice of removal, Defendant calculates the amount in controversy to be $2,010,650 for this claim.  (*Id.* at 11.)  Plaintiff contests Defendant's figure and argues Defendant has not established the number of employees that received wage statements.  (ECF No. 5 at 17.)  In the opposition, Defendant revises its figure to $2,054,650 based on the following calculation: (($50 initial penalty × 128 pay periods) + ($100 subsequent penalty × 6,299 pay periods) and capped at $4,000 per employee) + ($250 penalty × 6,427 pay periods).[1]  (ECF No. 6 at 12.)  Defendant asserts the alleged employer name and address error would make every wage statement a violation.  (*Id.* at 17.)

---

[1] Defendant's calculation includes both statutory penalties under California Labor Code § 226 and civil penalties under California Labor Code § 226.3.  Plaintiff claims entitlement to both types of penalties.  (ECF No. 1 at 24.)

10

If the alleged employer name and address error is true, then every issued wage statement would constitute a violation of California Labor Code § 226(a) and would result in penalties. *See Ramirez v. Carefusion Res., LLC*, No. 18-cv-2852-BEN-MSB, 2019 WL 2897902, at *4 (S.D. Cal. July 5, 2019) (finding a 100% wage statement violation rate reasonable where the plaintiff alleged the wage statements did not comply with all § 226(a) requirements, such as by failing to indicate the employer's name and address). Because of the alleged employer name and address error on the wage statements, the Court finds the 100% wage statement violation rate to be reasonable. Accordingly, Defendant has satisfactorily shown the wage statement violations claim establishes an amount of controversy of $2,054,650.

In sum, Defendant's calculations reasonably and appropriately yield an amount in controversy of $6,075,098 for Plaintiff's claims of unpaid minimum wages, unpaid overtime, meal period violations, rest period violations, and wage statement violations. This calculated amount in controversy does not account for waiting time penalties or attorneys' fees — amounts that, if included, would bring the amount in controversy in greater excess of $5 million. Therefore, the Court finds Defendant has shown by a preponderance of the evidence that the amount in controversy in this case exceeds $5 million as required by CAFA.

### IV. CONCLUSION

For the aforementioned reasons, the Court hereby DENIES Plaintiff's Motion to Remand. (ECF No. 5.)

IT IS SO ORDERED.

**DATED: August 15, 2022**

Troy L. Nunley
United States District Judge